NEW ORLEANS, OPELOUSAS & G. W. R. R. Co. *v.* P. LAGARDE, SEN'R.

In an action by a Railroad company to expropriate property, under the Act of 8th of March, 1852, the Judge charged the jury that "in assessing the *land and improvements* they had not any right to take into consideration the benefit derived by the owner from the contemplated improvements, yet they could take the benefit derived by the owner from the improvement into consideration in assessing the *damages*, if any, the owner would sustain." *Held:* The charge was correct.

The Judge refused to charge the jury in this case, that in making "their estimate of the price which should be paid for the expropriation, they must take into consideration not only the general value of the property, of the same nature and quality, but the particular value which the land may possess in relation to the rest of the estate, from which it is to be dismembered, and to the injury which this dismemberment may cause the defendant." The Judge refused, also, to charge that "the law contemplated the expropriation should be made before operations are commenced, and if this be not done, whatever augmentation may have arisen in the value of the land from the location of the road, if allowed at all, is not to be allowed in compensation for damages done until the expropriation is legally effected." *Held:* The refusal in both cases was correct.

APPEAL from the District Court of the Parish of Lafourche Interior, Cole, J.

*J. C. & A. Beatty*, for plaintiffs:

The court decided that the jury in estimating the value of the land expropriated could not take into consideration the benefit derived by the owner from the contemplated improvement, but they could take the benefit derived by the owner from the improvement into consideration in assessing the damages, if any, the owner would have sustained.

Is the law correctly stated in this instruction? We maintain the affirmative. The third section of the Act, (Laws of 1852, p. 91) directs that the jury shall find two things:

First, what is the value of the land with its improvements.

And second, what damages, if any, the owner would sustain in addition ·to· the loss of the land by its appropriation to the uses of the company.

The distinction being thus clearly made in the third section between the value of land and the damages, the fourth section proceeds to declare that in estimating the value of·the land no deduction is to be made on account of any benefit derived by the owner from the contemplated improvement, but it is altogether silent as to the rule to be followed in estimating the damages.

There could be no stronger case than this for the application of the rule that the inclusion of one is the exclusion of the other. It cannot be said in this matter one case was in the mind of the Legislator and not the other. In the immediately preceeding section of the law the two questions are distinctly made, and the jury are directed to make a separate finding as to each. In the fourth section a rule is established for their guidance in determining one of these questions. The conclusion is irresistible that the same rule was not intended to be applied to the decision of the other questions.

But this difference as to the rule in estimating the value of the property actually taken and the damage to the rest of the property is not a merely arbitrary one established by the law; it is founded in sound reason.

For, although the road may be an inconvenience and a disadvantage to the defendant, in some respects, as in the working of his mill, as is proved in this case, yet, if on the other hand the convenience and advantage of the road to the land is such as actually to have already doubled its value, as is likewise clearly proved in this case, it is impossible to say that the property has been damaged. It seems, at all events, to be an inappreciable sort of damages to a man which makes him twice as rich as he was before.

In opening streets, the benefits derived to the rest of the property are considered an offset even to the value of the property actually taken. See case of *Euphrosine Street*, 7 Ann. p. 72.

*Hall & Bush*, for defendant and appellant.

VOORHIES, J. This action is based on the Act entitled "An Act to provide for the expropriation of lands for railroads and other works of public utility," approved 8th March, 1852. The plaintiffs allege that they required for the construction of their railroad, a certain portion of the defendant's land, measureing six and seven-tenths acres, as described in a plan annexed to their petition, that they could not agree with the defendant for the price thereof. They therefore pray that said land may be adjudged to them at the value which may be fixed and allowed to the defendant according to law.

The defendant alleges that the quantity thus claimed is greater than that which is necessary for the railroad. He claims $150 per acre as the value of said land, and $1500 for the improvements thereon, and also claims $2500 as damages resulting from said expropriation.

The case was submitted to a jury empannelled under said Act, and the defendant is appellant from a judgment rendered on their verdict, awarding him $191 50, as the value of his property, and rejecting his other claims.

On the trial, the District Judge overruled the defendant's objection to the introduction of testimony to show that the construction of the railroad instead of causing any injury to the defendant, would materially improve the value of his property.

We do not think the Judge erred. Evidence of this kind is admisssable in mitigation of damages. Under the third section of said Act, it was incumbent upon the jury to determine "what was the value of the land described in the petition, with its improvements, and what damages, if any, the defendant would sustain, in addition to the loss of the land, by its appropriation to the use of the company."

In assessing the damages, which could only be conjectural, it was therefore proper for the jury to consider what probable advantages, or injury, might result to the defendant in consequence of the construction of said road The Judge's charge was clearly in accordance with said statute; he charged the jury "that in assessing the land and improvements (by which we understand as meaning by him the land and improvements taken) they had not any right to take into consideration the benefit derived by the owner from the contemplated improvement, yet, they could take the benefit derived by the owner from the improvement into consideration in assessing the damages, if any, the owner would sustain."

We think the Judge, *a quo*, did not err in refusing to charge the jury that in making "their estimate of the price which should be paid for the expropriation, they must take into consideration not only the general value of the property of the same nature and quality, but the particular value which the land may possess, in relation to the rest of the estate, from which it is to be dismembered, and to the injury which this dismemberment may cause the defendant." This may be considered essential as a general rule in relation to cases for the compulsory transfer of property, as prescribed under our Code, (Article 2604, *et seq.*) but the present case forms an exception to it. Although not required to be given specially in charge, yet we doubt not but that the jury, in forming their verdict, must have taken it into consideration.

The defendant's counsel also requested the Judge to charge the jury "that the law contemplated the expropriation should be made before operations are commenced, and that if this be not done, whatever augmentation may have

OPELOUSAS R. R. *v.* LAGARDE. arisen in the value of the land from the location of the road, if allowed at all, is not to be allowed in compensation for damages done until the expropriation is legally effected." We think the charge was properly refused. If the proposition assumed be correct, it would entirely defeat the object of the lawmaker. The divestiture only takes effect from the time of the payment of the price of the property taken for purposes of public utility, to ascertain which, it is necessary that the land should be surveyed and its value determined according to the mode prescribed by law.

In the present case, we think the assessment was made upon legal and equitable principles, and strictly in accordance with the fourth section of said Act.

It is therefore ordered and decreed that the judgment of the District Court be affirmed with costs.

SLIDELL, C. J. There is some obscurity, and, perhaps, incorrectness in portions of the Judge's rulings and charge, but in determining whether the verdict and judgment shall be set aside as erroneous, we should enquire what are the legal rights of the defendant under the Statute and Constitution, and whether upon a fair application of the law of the case to the evidence, substantial justice has been done by the verdict. For if it has, the obscurity of the Judge's charge, or even an error in it, are insufficient reasons for disturbing a just verdict and judgment.

The defendant can at the utmost claim as payment for the land taken from him a price equivalent to its just value at the time it was taken. Now, as to the price of the land taken, the assessment of the jury, $191 50, is unquestionably an adequate, and even a liberal estimate. There is no injustice, then, on this score.

But the defendant contended at the trial that the convenient use and the value of the land and buildings left to him, would be impaired by dismembering them from the part taken from him; that he was entitled to damages for this impairing of the convenient use and value by the dismemberment; and that against these damages there could not be a set off of the increased value given to the property left by the construction of the railroad, for the purposes of which a part of his land was taken.

This proposition, in my opinion, cannot be sustained. In the case of the opening of Euphrosine street, decided under the Constitution of 1845, which contains the same provisions on the subject of expropriation as the present Constitution, it was held by a majority of the court that prospective benefits accruing from a public improvement to the land left, could be set off, even against the estimated value of that part of his land taken from the proprietor. *A fortiori,* can such set off be made in estimating the damages incurred as to the land left.

The consideration that in the case referred to it was the municipal government, asking an expropriation for the purpose of a street, and here it is a private corporation, asking for an expropriation for the purpose of a railroad track, makes no difference. For, in the one case, and in the other, the authority to ask a judicial expropriation is granted with a view to accomplish an object of public utility. The public good is the motive of the legislative grant of authority in both cases.

A consideration of the evidence in this cause has satisfied me that the verdict gives the defendant a liberal price for the land taken, and that any injury

accruing by the dismemberment, to the use and value of the land left, is amply <span style="float:right">Opelousas R. R.<br>v.<br>Lagarde.</span> compensated by the increased convenience and increased value arising from the construction of the railroad.

I am, therefore, of the opinion the judgment should be affirmed.

Spofford, J. I concur in the foregoing opinion of Mr. *C. J. Slidell.*